UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Samuel Ochoa Ochoa,

　　　*Petitioner*,

v.

Kristi Noem, Secretary, U.S. Department
of Homeland Security; Todd Lyons, Acting
Director of U.S. Immigration and Customs
Enforcement; Samuel Olson, Deputy Field
Office Director, Chicago Field Office,
Immigration and Customs Enforcement;
Brandon Crowley, Clay County Jail
Commander[1]

　　　*Respondents*.

No. 25 CV 10865

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Samuel Ochoa Ochoa, a noncitizen detained by Immigration and Customs
Enforcement ("ICE"), petitions the court for a writ of habeas corpus under 28 U.S.C.
§ 2241. Ochoa Ochoa has also moved for a Temporary Restraining Order requesting
similar forms of relief. For the reasons below, the Second Amended Petition is granted
in part, and the motion for a TRO is denied as moot.

I.　**Background**

Ochoa Ochoa entered the United States on or about October 11, 2023 at or near
El Paso, Texas, and was soon after apprehended by the Department of Homeland
Security ("DHS"). [*See* Dkt. 18-1 at 3.][2] The following day, DHS issued Ochoa Ochoa

---

[1]　　The proper respondent to a noncitizen's habeas petition is the warden of the detention
center in which he is detained. *Kholyavskiy v. Achim*, 443 F.3d 946, 949-53 (7th Cir. 2006).
The clerk is directed to add Brandon Crowley as a respondent in the case caption.
[2]　　Citations to docket filings generally refer to the electronic pagination provided by
CM/ECF, which may not be consistent with page numbers in the underlying documents.

a Notice to Appear ("NTA"), initiating 8 U.S.C. § 1229(a) removal proceedings, before releasing him on his own recognizance. *Id.* The NTA charges Ochoa Ochoa with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as "an alien present in the United States who has not been admitted or paroled," and the "arriving alien" checkbox is unmarked. [Dkt. 1-1.] Respondents do not contend that Ochoa Ochoa was subsequently convicted of any crimes or otherwise violated the conditions of his release. [*See* Dkt. 14.] On September 26, 2024, Ochoa Ochoa timely filed a *pro se* defensive I-589 asylum application with the Executive Office for Immigration Review ("EOIR"), at the Chicago Immigration Court. [Dkt. 1-2.]

On June 12, 2025, DHS moved the Immigration Court to dismiss Ochoa Ochoa's 8 U.S.C. § 1229(a) removal proceedings so that it could place him into expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). [Dkt. 1-3.] Although the Immigration Court had not yet adjudicated the motion, DHS detained him as he left the courthouse that day, then transferred him to various facilities in Illinois, Kentucky, Texas, and Indiana. [*See* Dkt. 18-1 at 3.] During this time, Ochoa Ochoa's removal proceedings were transferred to the Cleveland Immigration Court, which granted DHS's motion to dismiss on June 26, 2025. [Dkt. 1-4.] Ochoa Ochoa then retained counsel and appealed the dismissal to the Board of Immigration Appeals ("BIA"), where it remains pending. [Dkts. 1-5, 1-6.]

While detained in the Northern District of Illinois[3], Ochoa Ochoa filed an initial habeas petition under 28 U.S.C. § 2241 before this court on September 9, 2025, followed by amendments on September 18 and October 14, 2025, together with a motion for a TRO. [Dkts. 1, 12, 13, 18.] He is now detained in ICE custody at Clay County Jail in Brazil, Indiana. [Dkt. 18 at 2.]

## II. Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *See, e.g.*, *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Ochoa Ochoa claims violations of the Immigration and Nationality Act ("INA") (Count I), the Administrative Procedure Act ("APA") (Count II), and the Due Process Clause of the Fifth Amendment (Counts III and IV). [Dkt. 18-1 at 19–22.] In opposition to Ochoa Ochoa's habeas petition and TRO motion, Respondents make four arguments: (1) that this court lacks jurisdiction over the habeas claims, (2) that Ochoa Ochoa is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2), (3) that Ochoa Ochoa's APA claim does not challenge a final agency action, and (4) that Ochoa Ochoa has no cognizable right to due process. [Dkt. 14 at 3–13.]

---

[3]     The parties agree that venue is proper and that the court's jurisdiction over the case is secure. [Dkt. 18 at 2.] Ochoa Ochoa initially filed this petition when he was detained in the district, so the court agrees that it has jurisdiction despite his subsequent transfer to a facility in Indiana. *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) ("Gamboa's proper filing of his § 2241 petition in the district where he was incarcerated at the time vests us with jurisdiction over Gamboa's appeal.") (citing *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021)).

As discussed below, the court concludes that it has jurisdiction over Ochoa Ochoa's habeas claim as to the lawfulness of his current detention. It grants the petition on the merits of Ochoa Ochoa's claims under Counts One and Three insofar as that he seeks (1) a declaration that he is not subject to mandatory detention under § 1225(b)(2) and is instead detained pursuant to § 1226(a); and (2) an order requiring that he be provided a § 1226(a) bond hearing. The court does not reach the remaining claims, including any request for relief under the APA.[4]

### A. Jurisdiction

Respondents point to three provisions that curtail a district court's ability to consider habeas petitions filed by noncitizen detainees: 8 U.S.C. § 1252(a)(2)(B)(ii), § 1252(b)(9), and § 1252(g). In certain immigration matters, the INA does limit the jurisdiction that district courts may exercise. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). None, however, apply here.

### 1. Section 1252(g)

Respondents assert that § 1252(g) strips the court of jurisdiction over any challenge to a noncitizen's detention in relation to removal proceedings, including in relation to a decision to initiate expedited removal proceedings. [Dkt. 14 at 4–5]. The

---

[4]    Respondents argue that Ochoa Ochoa has not satisfied administrative exhaustion (because he has not requested or been denied bond by an IJ) only with respect to the APA claim. "[S]ound judicial discretion governs" whether exhaustion should be required. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Ochoa Ochoa to attempt exhaustion by requesting a bond hearing from EOIR would be futile. Respondents' position is that Ochoa Ochoa is detained under § 1225(b)(2) and IJs are bound by the BIA's recent holding that they "lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025). "There is nothing to indicate the BIA would change its position" "because the BIA has 'predetermined' the statutory issue." *Gonzalez*, 355 F.3d at 1019 (cleaned up).

provision states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." § 1252(g). But section 1252(g)'s sweep is narrow—"[o]nly challenges to the three listed decisions or actions . . . are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021).

Here, Ochoa Ochoa's petition does not challenge the "commencement" of his removal proceedings (that is, being issued an NTA); the "adjudication" of his case (as EOIR has not yet granted any form of relief, issued a removal order, or otherwise terminated his proceedings); or the "execution" of a removal order (again, as EOIR has not entered one). § 1252(g). He challenges only what he says is his unlawful detention without a bond hearing. Still, Respondents contend that § 1252(g) applies because "adjudicating whether bond should be given to a foreign national in removal proceedings is part and parcel"[5] of how an IJ "adjudicate[s a] case," within the meaning of § 1252(g). [Dkt. 14 at 4.] This limitless reading fails[6], not least of all

---

[5]    Bond proceedings are "separate and apart from" and "form no part of[] any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d); *see also* 8 C.F.R. §§ 1236.1, 1003.17(a); *Angeles-Moran v. Lynch*, 655 F. App'x 504, 506 (7th Cir. 2016) (noting that bond and removal cases maintain separate records of proceedings and do not share filings).

[6]    Respondents rely on inapposite cases where individuals sought not habeas relief but damages claims under *Bivens* or the Federal Tort Claims Act. *E.g.*, *Khorrami v. Rolince*, 493 F. Supp. 2d 1061, 1069 (N.D. Ill. 2007) (noting that petitioner "could have raised his challenges in a petition for habeas corpus"); *Sissoko v. Mukasey*, 509 F.3d 947, 949 (9th Cir. 2007) (explaining that an alternative avenue for remedying a false arrest would have been a habeas petition).

because Ochoa Ochoa does not challenge an IJ's adjudication of his bond case. He has not had a bond hearing to begin with.

Rather, the Supreme Court has "rejected as 'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)). Because "nothing in § 1252(g) precludes review of the decision to confine," it does not apply here. *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000); *see, e.g., Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000) (holding that the provision did not preclude judicial review of a noncitizen's habeas petition challenging an action unspecified in § 1252(g)); *Guerrero Orellana v. Moniz*, 2025 WL 2809996 (D. Mass. Oct. 3, 2025) (concluding that § 1252(g) did not apply to habeas challenge of ongoing detention without a bond hearing); *D.S. v. Bondi*, 2025 WL 2802947 (D. Minn. Oct. 1, 2025) (same).

### 2. Section 1252(b)(9)

Next, Respondents contend that Ochoa Ochoa's habeas petition constitutes an impermissible collateral attack on his removal proceedings that triggers § 1252(b)(9), which provides that "no court shall have jurisdiction, by habeas corpus . . . or by any other provision of law," to review any questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States" except via judicial review of a final order of removal.

As above, the Supreme Court has rejected the argument that § 1252(b)(9) bars review of legal questions concerning detention pursuant to §§ 1225 and 1226, holding

6

that it "does not present a jurisdictional bar" where those bringing suit "are not asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," or "the process by which their removability will be determined." *Jennings*, 583 U.S. at 294–95. In evaluating what § 1252(b)(9) precludes, the *Jennings* Court analyzed the arguments that Respondents raise here, concluding that "questions of law" as to whether "certain statutory provisions require detention without a bond hearing" (or in Ochoa Ochoa's case, *permits* such detention) cannot be said to "arise from" an action taken to remove a noncitizen. *Id.* at 292–93. Nor is detention itself such an action. *Id.* at 295 n. 3. Indeed, *Jennings* observed that adopting this "extreme" interpretation of § 1252(b)(9)—requiring any claims testing the legality of detention to be "cramm[ed] . . . into the [judicial] review of final removal orders"—"would be absurd." *Id.* at 293.

The provision does not bar "claims challenging the conditions or scope of detention of aliens in removal proceedings," as Respondents acknowledge. [Dkt. 14 at 6.] § 1252(b)(9) does not apply here. *See, e.g.*, *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025) (holding that § 1252(b)(9) did not apply to habeas challenge of ongoing detention without a bond hearing); *Guerrero Orellana*, 2025 WL 2809996 (same).

### 3.    Section 1252(a)(2)(B)(ii)

Last, Respondents argue that § 1252(a)(2)(B)(ii) precludes this court from considering any challenge to any discretionary decision by the Attorney General or Secretary of Homeland Security. That provision states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the

Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." § 1252(a)(2)(B). According to Respondents, § 1252(a)(2)(B)(ii) applies because Ochoa Ochoa argues that his detention should be governed by § 1226(a) rather than § 1225(b), and the former statute "clearly confers discretion" to detain upon the immigration authorities. [Dkt. 14 at 7.] This reasoning falls flat since, again, Ochoa Ochoa's petition does not challenge a discretionary bond denial by an IJ under § 1226(a). He has not been permitted such a hearing *because* Respondents maintain that he is mandatorily detained under § 1225 instead.[7] § 1225(a)(2)(B)(ii) therefore does not bar this court from considering Ochoa Ochoa's habeas petition.

## B.    Basis for Detention

Immigration detention is governed by two statutory sections: 8 U.S.C. §§ 1225 and 1226. Section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," while § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." *Jennings,* 583 U.S. at 288–289 (emphasis added). The parties agree that Ochoa Ochoa is not mandatorily detained under § 1226(c) because none of its crime- or security-related grounds apply to him. Nor, they agree, is he detained under § 1225(b)(1) since he is

---

[7]    Respondents incorrectly cite *Zamirov v. Olson*, 2025 WL 2618030 (N.D. Ill. Aug. 29, 2025) as an example of § 1252(a) applying to "the discretionary decision of whether to *pursue* expedited removal proceedings." [Dkt. 14 at 7 (emphasis added).] Rather, in that case, review of the noncitizen's habeas petition was "foreclosed by § 1252(a)(2)(A)(i) to the extent he seeks review of the expedited *removal order*" that was issued. *Id.* at *2 (emphasis added).

not currently and has never been in expedited removal proceedings. What's left, then, is whether Ochoa Ochoa's detention is governed by § 1226(a), as he contends, or by § 1225(b)(2), which is Respondents' position.

Section 1226(a) sets out the "default rule" for the discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an IJ. 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

By contrast, § 1225 governs the detention of those "seeking admission." An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," § 1225(a)(1), and "fall[s] into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 288. The second category creates a catchall mandatory detention provision: "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under § 1229]." 8 U.S.C. § 1225(b)(2)(A). Unlike noncitizens detained under § 1226(a), those detained under § 1225 may only be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

9

Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, fails. It cites no binding authority and does not grapple with *Jennings*. As many other district courts have concluded[8], "Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Alejandro v. Olson*, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025); *see, e.g.*, *Lopez Benitez v. Francis*, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) ("[T]he line historically drawn between sections 1225 and 1226, which makes sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'") (cleaned up) (citing *Jennings*, 583 U.S. at 288-89); *Diaz Martinez v. Hyde*, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) ("The idea that a different detention scheme would apply to non-citizens 'already in the country,' as compared to those

---

[8]     *See, e.g.*, *Singh v. Lyons*, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); *Sanchez Ballestros v. Noem*, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); *D.S. v. Bondi*, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Lepe v. Andrews*, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712417 (N.D. Iowa Sept. 23, 2025); *Hasan v. Crawford*, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Velasquez Salazar v. Dedos*, 2025 WL 2676729 (D. N.M. Sept. 17, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

'seeking admission into the country,' is consonant with the core logic of our immigration system.") (cleaned up) (citing *Jennings*, 583 U.S. at 289). The court finds this reasoning persuasive and adopts it here.

According to Respondents, § 1225(b)(2) authorizes Ochoa Ochoa's detention since he meets its three plain-text elements as (1) an "applicant for admission" who (2) remains "seeking admission" and (3) is in "a proceeding under section 1229a." [Dkt. 14 at 7–8.] He does not.

As to the first term, Respondents state that Ochoa Ochoa is an "applicant for admission" because "all unadmitted foreign nationals in the United States are 'applicants for admission,' regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." [Dkt.14 at 8.] Since both §§ 1225 and 1226 discuss the detention of noncitizens who have not been admitted—for instance, those who inadmissible and subject to mandatory detention under § 1226(c) as an exception to § 1226(a)—the term "applicant for admission" alone does not mean that § 1225 governs detention here. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1257 (W.D. Wash. Apr. 24, 2025) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)) ("When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies."); *see also, e.g.*, *Gomes v. Hyde*, 2025 WL 1869299, at *6 (D. Mass. July 7, 2025) (noting that without the criminal conduct criterion, "inadmissibility on one of

11

the three grounds specified in Section 1226(c)(1)(E)(i) is not by itself sufficient to except [a noncitizen] from Section 1226(a)'s discretionary detention framework").

Second, and most importantly, "'seeking' implies action and that those who have been present in the country for years are not actively 'seeking admission.'" *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025). Here, Ochoa Ochoa entered the United States near El Paso—and DHS released him on his own recognizance—two years before his redetention in Chicago, over 1,200 miles away from the southern border. His NTA indicates that DHS declined to designate Ochoa Ochoa as an "arriving alien," [Dkt. 1-1], which is the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)]."); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024) (noting that implementing regulations may provide a "useful reference point for understanding a statutory scheme").

Respondents argue that because Ochoa Ochoa has not been admitted to the United States, he continues to be a noncitizen "seeking admission." [Dkt. 14 at 9.] But this interpretation would render the phrase "seeking admission" in § 1225(b)(2)(A) mere surplusage by equating it to "applicant for admission." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*,

12

534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Moreover, "the phrase 'seeking admission[,]' [though] undefined in § 1225(b)(2)(A)[,] necessarily implies some sort of present-tense action." *Diaz Martinez*, 2025 WL 2084238, at *4; *see Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'") In agreement with other district courts, this court rejects Respondents' expanded reading of § 1225(b)(2) and the term "seeking admission." *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *3 (D. Colo. Sept. 16, 2025); *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025). Because Ochoa Ochoa is not, nor was he at the time he was redetained, "seeking admission," § 1225(b)(2)(A)'s mandatory detention provision does not apply.

Third, despite moving to dismiss Ochoa Ochoa's § 1229(a) proceedings prior to a merits hearing on his asylum application and then detaining him, Respondents say that he is enjoying "the benefits of" such proceedings, as required by § 1225(b)(2). [Dkt. 14 at 9.] Respondents suggest that when DHS moves EOIR to dismiss § 1229(a) proceedings for the purposes of placing a noncitizen in expedited removal, it need not actually initiate expedited removal proceedings to detain under § 1225(b). Put differently, according to Respondents, DHS is free to pre-empt the bond hearing provision of § 1226(a) altogether, while still claiming that a noncitizen has been afforded the procedures provided by § 1229(a) and thus is subject to § 1225(b)(2) detention without a bond hearing—even when a noncitizen would not have been

13

detained *but for* the steps taken to *end* § 1229(a) proceedings to pursue expedited removal. This contorted reading of the detention statutes would render the bond hearing provisions of § 1226(a), as well as the mandatory detention exceptions at § 1226(c), meaningless. *See Gundy v. United States*, 588 U.S. 128, 140–41 (2019) (noting that a "fundamental canon of statutory construction" is that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"); *cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (stating that "[t]he basic rule [is] clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Respondents cite *Matter of Yajure Hurtado*, a non-binding BIA decision issued on September 5, 2025, holding that IJs lack jurisdiction to hold bond hearings or grant bond to individuals charged with entering the country without inspection. 29 I&N Dec. 216 (BIA 2025). But that decision is not binding on this court, nor is it particularly persuasive considering that BIA's view "has not remained consistent over time." *Loper Bright Enters.*, 603 U.S. at 386. This court's conclusion is supported by a longstanding agency practice of providing § 1226(a) bond hearings to noncitizens like Ochoa Ochoa who were released on recognizance upon entering the United States, placed in standard removal proceedings, and then redetained. *See also, e.g.*, *Alejandro*, 2025 WL 2896348; *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025). As he is neither in expedited proceedings nor a noncitizen "seeking admission," Ochoa Ochoa is not lawfully detained under § 1225(b).

14

### C.    Due Process

Having concluded that Ochoa Ochoa's detention is discretionary and not mandatory, the court turns to whether it violates due process. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

To support its argument that Ochoa Ochoa has limited due process rights in the detention context, Respondents rely on *Dep't of Homeland Sec. v. Thuraissigiam*, where the Supreme Court held that a petitioner who was still "at the threshold of initial entry," though technically in the country, could still be treated as "an alien seeking initial entry." 591 U.S. 103, 114 (2020) (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border and had not acquired due process protections). Contrary to Respondents' position, *Thuraissigiam* held only that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry." *Id.* at 140; *see also Shaughnessy v. United States*, 345 U.S. 206, 212 (1953) (explaining that noncitizens "on the threshold of initial entry stand[] on a different footing" than those who have "passed through our gates").

Here, Ochoa Ochoa "effected entry" into the United States since being released on recognizance, *see Thuraissigiam*, 591 U.S. at 140, and therefore was "already in the country." *See Jennings*, 583 U.S. at 289. The Fifth Amendment's Due Process

Clause applies to noncitizens, "whether their presence is lawful, unlawful, temporary, or permanent," *id.* at 679, and immigration detention may violate due process unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.*

Applying the three-part balancing test set forth in *Mathews*, 424 U.S. 319, Ochoa Ochoa's redetention without a bond hearing violates procedural due process. Ochoa Ochoa has a cognizable private interest in being freed from unlawful detention without any opportunity for a bond hearing; there is a severe risk of erroneous deprivation based on the factual record and explained above; and the government's interest is slight insofar as Ochoa Ochoa has been redetained without an individualized custody determination evaluating dangerousness and flight risk or any articulated change in circumstances since DHS released him on recognizance in October 2023. As other courts have concluded in cases involving similar factual circumstances, his detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *13; *Doe v. Moniz*, 2025 WL 2576819, at *11 (D. Mass. Sept. 5, 2025) ("In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights.").

16

### D. Scope of Relief

Ochoa Ochoa requests immediate release from custody or, in the alternative, an individualized custody redetermination hearing.[9] The latter is appropriate here, as the procedural due process violation arises from his redetention without a bond hearing, rather than the detention itself, which is discretionary under § 1226(a).[10]

When granting immigrant detainees' habeas petitions, an "overwhelming consensus" of courts have placed the burden on the government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Gonzalez v. Barr*, 955 F.3d 762, 772 (9th Cir. 2020); *see, e.g.*, *Lopez-Arevelo v. Ripa*, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025) (ordering bond hearing within seven days or release); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same); *Roman v. Noem*, 2025 WL 2710211 (D. Nev. Sept. 23, 2025) (same). Although noncitizens typically bear the burden of proof at bond hearings before EOIR, *see* 8 C.F.R. § 236.1(c)(8), shifting the burden reflects the concern that a noncitizen "should not have to share the risk of error equally" in the context of a due

---

[9] As to other forms of relief requested, Ochoa Ochoa may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act. 28 U.S.C. § 2412(d); 5 U.S.C. § 504; *see Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 901 (E.D. Wis. 2007) ("[I]t cannot be reasonably disputed that the EAJA applies to a habeas action challenging immigration-related detention.").

[10] Immediate release from custody may be an appropriate form of relief in cases brought outside of habeas or those centering other circumstances, such as a previous grant of bond by an IJ, *see, e.g.*, *Beltran Barrera*, 2025 WL 2690565, or DHS's violation of an existing consent decree by conducting improper arrests in the Northern District of Illinois. *See Castañon Nava v. Dep't of Homeland Sec.*, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025); *Castañon Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880 (N.D. Ill. 2020).

process violation and his "loss of liberty." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020); *see also Lopez Santos v. Clesceri*, 2021 WL 663180, at *5 (N.D. Ill. Feb. 19, 2021). The court agrees this course is appropriate. *Velasquez Salazar*, 2025 WL 2676729, at *9 (collecting cases).

## III. Conclusion

For the foregoing reasons, the Second Amended Petition for Writ of Habeas Corpus is granted. Petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment.

Within seven days of this order, Respondents must either: (1) provide Ochoa Ochoa with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Ochoa Ochoa's continued detention; or (2) release Ochoa Ochoa from custody, under reasonable conditions of supervision.

Enter: 25-cv-10865
Date: October 16, 2025

_____
Lindsay C. Jenkins

18